NO. 7421-7516.

SAVINGS & HOMESTEAD ASS'N

VS

AUGUST FRANK, ET AL.

STATE OF LOUISIANA

COURT OF APPEAL

PARISH OF ORLEANS.

7421    7516

7421

# OPINION.

By his Honor John St. Paul.

This is a proceeding in concurso arising out of a building contract. The details seem complicated, but once analysed they appear simple enough.

On Sept 2nd 1915 August Frank, a builder, contracted with Dr. Chas H. Gibbons, as owner, to construct a building for $3020, payable in five equal instalments. The owner, however, was to furnish all the lumber except the oak floors and the mill work.

There was extra work done amounting to $152, and the owner was allowed a credit of $220. for a slate roof omitted; thus leaving a total gross contract price of $2952.

During the first part of the work Dr. Gibbons paid (or advanced) to the contractor in cash $300. to carry on the work. On December 3rd, the contractor received $908. through Martin Manion, a Notary Public, and on July 3rd 1916 a further sum of $604. through the same Notary. These were all the payments ever received by the contractor, aggregating a total of $1812, leaving Gibbons still indebted to him for a balance amounting to $1140.

But as there has been deposited in court a sum of $940, which as between themselves we think belongs to Gibbons rather than to the contractor, we believe that if Gibbons be made to pay an additional $200, the contractor will have been paid all that possibly can be due him. In fact the thing is self evident; $1812 plus $940. plus $200 equals $2952, being the full contract price as above stated.

In addition to this Gibbons has not paid for the lumber which he bound himself to furnish. This amounts to $599.44; being rough lumber furnished by the W. W. Carre Co. amounting to $515,44, and shingles furnished by Geo. W. Prechter amounting to $83.60.

On the above mentioned contract the National Surety Co became surety for the contractor.

On November 5th, 1915, when the building was about half finished, Gibbons found a purchaser, one Brand, who dealt through the plaintiff Homestead Association which was finance to the deal for him.

For convenience the contractor entered that day into a new contract with the Homestead by which he was to construct the building for $4700. payable in five equal instalments, and he was to furnish all the materials including the rough lumber.

On this contract Gibbons became surety for the contractor. But by a collateral agreement between the contractor and Gibbons it was understood that they were to proceed under the first contract, and that as before Gibbons was to furnish the rough lumber; and the increase in price ($1680) was to go to Gibbons in consideration of the work and materials to be furnished by him. Accordingly On November 10th 1915, Gibbons assigned the first contract to the Homestead, to which the National Surety Co, as surety thereon, consented.

The Homestead made four payments of $940 each, or $3760 in all, through their Notary, Martin Manion; out of which the latter paid the contractor $908 plus $604, equal to $1512, and returned to Gibbons the $300 which he had advanced to the contractor during the work. That is to say the contractor received in this way the $1812 of which we have already spoken. The balance of these four payments went to Gibbons or was paid out for his account.

The fifth payment of $940 was deposited in court by the Homestead, thus completing the $4700 of the second contract. This is the $940 of which we spoke before and which we said belonged rather to Gibbons than to the contractor, since it is clear that as between them the second contract was ### intended for Gibbons benefit and not for that of the Contractor, But this is not worth elaborating, since all that the contractor is entitled to receive is $2952, of which $1812 was paid him in cash, $940 has been deposited in court, and Gibbons must pay $200 more to make up the amount.

## III.

If Gibbons pays the contractor in full by abandoning the $940 deposited in court by the Homestead and paying an additional $200 to complete the balance due (in all $1140) thus reducing by that sum the claims outstanding against the contractor, and in addition thereto carries out his obligation to furnish the rough lumber, by paying the Carre and Prechter bills, aggregating $599.04, then we fail to perceive on what principle of reason or equity the National Surety Co can hope to be released from liability for the further defaults of the contractor; since Gibbons on doing all this will have complied with his obligation in full, and will himself be entitled to immunity from all further claims by virtue of the obligation undertaken toward him by the National Surety Co. Nor can the latter complain, since there is nothing in any act of his (if he comply with his obligations aforesaid) which can in the degree prejudice any right which the Surety Co has or might have had.

## IV.

The court below allowed fourteen claims admittedly due (Tr.p.63), being items 1. 3. 5. 7. 9. 10. 11. 12. 13. 14. 15. 16. 17 and 19 of the judgment; in addition to which it allowed the claims of the Claiborne Avenue Sash Factory for $467.70 (Item 20) and G. Pitards' Sons for $26.30 (Item 2) both of which are no longer contested. It also allowed the claim of C. C. Hartwell Co for $50 (Item 18) and United Hardware Co for $77.51 (Item 6) which though still contested here, appear to us as being clearly due.

For all of these eighteen claims aggregating $2105.87 (interest and costs to be added as per Item 27) the court below gave judgment in solido against the contractor, and the National Surety Co (surety on the first contract), and C. N. Gibbons (surety on the second contract)

So far this was correct; but the court failed to adjust the relations between the Surety Co and Gibbons. This should have been done and we will do it later on.

The bill of W. W. Carre Co for rough lumber, amounting to $515.44 (Item 4) was allowed in sólido against the contractor, the National Surety Co, and C. N. Gibbons. As the contractor was not to furnish the rough lumber under the first contract, it is clear that the National Surety Co, surety on that contract alone, is not liable for this bill. Frank has not appealed and we cannot concern ourselves with his liability therefor. But as to Gibbons, we think he is liable.

It is true that the bill was charged and billed to one Globe Packing Co, now insolvent; but it was bought by Brand in consultation with Gibbons, and under some sort of agreement between them which is not made clear. Gibbons claims to have settled with Brand for the value thereof, but Brand claims that though there was to have been a settlement between them at some time to determine which one owed the other, yet no such settlement was ever had. At any rate neither Brand nor Gibbons ever paid Carre or the Globe Packing Co.

Again Gibbons was to furnish this lumber under both contracts; and although the estimated cost thereof was approximately only $800, he was allowed by the contractor the whole difference between the $3020 due under the first contract and the $4700 paid by the Homestead under the second contract. In other words there was to accrue to him a profit of some $900 or more, even after paying the full price of the rough lumber. Of this profit however, the contractor, the Homestead and Brand were all well aware, so that we have nothing to say thereon; except that it is a circumstance which tends to show that there must have been some understanding between Gibbons and Brand, and this to corroborate the latter's statement that there were matters requiring adjustment between them, and as to which there has been as yet no settlement between them.

And again in the second contract, Gibbons in his contract of suretyship, very distinctly bound himself "for the payment of all materials and labor already used and to be hereafter used on said building x x x by the said Frank or any other contractor or workman engaged in the construction thereof", which terms are broad

enough to cover the cost of any materials used in said building by whomsoever purchased, if not paid for by him.

And finally, both by the order given by Frank to the Homestead on January 12th, 1916 (Tr p. 70) and by Gibbons judicial admission in paragraph 8 of his supplemental answer, it is made clear that the difference of $1680 between the two contracts was to be paid over to Gibbons for the express purpose of paying for the materials which he was to purchase.

Under the circumstances we think that Gibbons should pay this bill; and we do not think that he has shwon such settlement with Brand as would call for relief on grounds of Equity, to wit, that he would be paying it twice.

### VI.

The Prechter claim for $63.60 (Item 5) is in exactly the same category as the foregoing.

### VII.

The judgment below (Item 25) condemns the contractor, Gibbons, and the Surety Co for $50, attorneys fees, in favor of the Homestead Co. The Surety Co is not liable because no such fees are provided for anywhere in the first contract. Gibbons however is liable therefor because by the terms of his contract of suretyship, annexed to the second contract, he expressly agreed to pay them. (Frank, the contractor, has not appealed).

### VIII.

The judgment below (Item) 24) discharges the Homestead and cancels all the inscriptions and liens. This seems correct, since the Homestead has paid all that it owes; and moreover no materialmen have appealed, the only appellants herein being the National Surety Company and Dr. Chas N. Gibbons.

### IX.

We think the costs of these proceedings should be borne in equal portions by the Surety Co and Dr. C. N. Gibbons since this judgment is largely an adjustment of the claims between these two parties, and

161

since each of them is also condemned severally for certain claims in favor of defferent parties.

## X.

To recapitulate; we think all the materialmen should recover the amount of their claims from one or the other of these two ~~appellants~~ appellants, and our decree is intended to have that result; that is to say;

Dr. Gibbons should pay the Carre claim $515.44; and the Prechter claim, $83.60. He should also pay the Homestead $50, attorneys fees; and besides this he should pay the further sum of $200 with legal interest from July 11th 1916, being the balance due by him to the contractor. he should also pay half the costs of these proceedings.

The National Surety Co should pay the other eighteen claims aggregating $2196.87, and upon doing so (and paying all costs) should be allowed to withdraw from the registry of the court the $940 deposited by the Homestead and should further ~~recover~~ recover the sum of $200 from Gibbons to complete the amount due by him to the contractor, and it should pay half the costs.

                                    so
Our decree will be framed as in substance and effect to accomplish just that result.

### DECREE.

It is therefore ordered adjudged and decreed, that the judgment appealed from, the paragraphs and items 1. 2. 3. 6. 7. 8. 9. 10. 11. 12. 13. 14. 15. 16. 17. 18. 19. and 20 be affirmed; with the added provision however, that if execution thereon or on any of them issue herein against C. N. Gibbons, the said C. N. Gibbons shall thereupon be subrogated to the right of the claimant against the National Surety Co, and may in turn have execution issue for like amount against the said National Surety Co, with liberty to proceed by motion and rule herein to that effect.

It is further ordered that paragraphs and items 4. 5. and 25 be amended by reversing, annulling and striking out therefrom any and all liability for said items on the part of the National Surety Co and leaving the said items and paragraphs as liabilities and judgments solel

solely against August Frank and Chas N? Gibbons in solido; and as thus amended the said paragraphs and items are affirmed.

It is further ordered that upon payment of the eighteen items mentioned in the first paragraph of this decree, to wit, items one to twenty, both inclusive (exempting items Four and Five) together with all the costs of these proceedings, by the National Surety Co, the said Surety Company shall thereupon (and not before) be allowed to withdraw from the registry of the court the sum of $940, deposited therein by the plaintiff herein; and shall thereupon also have judgment against the said Dr. C. N. Gibbons for the full sum of $200 (Two hundred Dollars) with legal interest from July 11th 1916 and one half of all costs by it paid herein; save and except costs of appeal; and leave to proceed herein by motion and rule for such judgment and for execution thereon against said Chas N. Gibbons.

It is further ordered that paragraph and item 22 be so amended that in calculating the limit of liability of the National Surety Co (fixed at $1600) the costs of these proceedings shall not be included, and that said limit of $1600 shall be taken to mean $1600 over and above the $940 to be withdrawn from the registry of the court and the $200 to be revovered from C. N. Gibbons; and as thus amended the paragraph and item is affirmed.

It is further ordered that as to all other items, to wit, paragraphs 21. 23. 24. 26. and 27, the judgment is affirmed.

It is further ordered that the appellants herein each bear his own costs of appeal, and that no account be taken thereof in the adjustment of costs between them.